**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

WILDLANDE FEVRIER,

Petitioner,

v.

Case No. 2:26-cv-02860-MIS-JFR

DORA CASTRO, in her official capacity as Warden of Otero County Processing Center; DAVID J. VENTURELLA, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; MARY DE ANDA-YBARRA, in her official capacity as Field Office Director, El Paso Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity as Secretary, U.S. Department of Homeland Security; and TODD BLANCHE, in his official capacity as Attorney General of the United States,

Respondents.

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

THIS MATTER is before the Court on Petitioner Wildlande Fevrier's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), ECF No. 2, filed August 28, 2026. Petitioner seeks release from immigration detention or a review of the legality of her custody. The Respondents answered the Petition ("Response") on September 11, 2026.[1] ECF No. 10. Having reviewed the Parties' submissions, the record, and the applicable law, the Court determines that Petitioner is an alien seeking admission and subject to mandatory detention under 8 U.S.C. §

[1] The Clerk's Office served all Respondents with the Petition pursuant to this District's Standing Order Regarding Service of Process in Immigration Habeas Petitions filed Pursuant to 28 U.S.C. § 2241, Case 1:26 mc-00004, ECF No. 3 (D.N.M. Jan. 28, 2026). ECF No. 3. However, as has become customary in these cases, the Warden did not respond to the Petition.

1225(b)(2). The Court will therefore DENY Petitioner's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"), ECF No. 2, without prejudice, as set forth below.

## I. Background

Petitioner is a citizen of Haiti who was paroled into the United States under the Haitian Humanitarian Program ("HHP") on January 28, 2024. Pet. at ¶¶ 23-24. Her authorized period of parole expired June 12, 2025. Pet. at ¶ 24. Petitioner was then granted Temporary Protected Status ("TPS") based on her Haitian citizenship. Id. at ¶ 25. However, the United States Department of Homeland Security ("DHS") terminated TPS for Haitian citizens, effective July 27, 2026. Id.[2] Petitioner has no criminal history. Pet. at ¶ 8; Resp. at ¶ 3.

On August 2 or 3, 2026, Petitioner attempted to enter Canada in order to claim asylum there. Pet. at ¶ 28; Resp. at ¶ 5. Canadian officials refused her entry and returned her to Champlain, New York Customs and Border Protection. Pet. at ¶ 28; Resp. at ¶ 6. Upon her attempted return, Petitioner was taken into custody by United States Immigration Customs and Enforcement ("ICE"). Pet. at ¶ 28; Resp. at ¶ 6. DHS then initiated removal proceedings. ECF No. 2-1 ("Notice to Appear"). Although the Notice to Appear is dated August 20, 2026, the Certificate of Service indicates that it was personally served to Petitioner on August 4, 2026. ECF No. 2-3. Petitioner has been in custody since and is currently detained at the Otero County Processing Center in Chaparral, New Mexico. Pet. at ¶ 33; Resp. at ¶ 7.

## II. Legal Standard

"The habeas statute provides that a federal district court may entertain a habeas application by a person held 'in custody under or by color of the authority of the United States,' or 'in custody

[2] Respondents state her TPS was terminated on July 20, 2026. The discrepancy does not impact the outcome of the Court's decision. Resp. at ¶ 4.

in violation of the Constitution or laws or treaties of the United States.'" Munaf v. Geren, 553 U.S. 674, 685 (2008) (quoting 28 U.S.C. §§ 2241(c)(1), (3)). A petition for writ of habeas corpus under 28 U.S.C. § 2241 is the appropriate vehicle for a noncitizen to challenge the legality of immigration detention. Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001).

**III. Discussion**

Petitioner first argues that even if she is properly classified as an arriving alien, the mandatory detention scheme of § 1225(b), requiring her detention without an individualized custody determination, violates her Fifth Amendment Due Process rights. Pet. at ¶¶ 50-56. Next, Petitioner argues that immigration officials improperly classified her as an arriving alien because the previous grant of immigration parole was not properly terminated and absent such termination, she is subject to the discretionary detention scheme of § 1226. Id. at ¶¶ 57-63. Finally, Petitioner asserts that the Notice to Appear is defective and violates her due process rights because the date on the certificate of service predates the date on the Notice itself. Id. at ¶¶ 64-68. She seeks immediate relief, or in the alternative, an individualized bond hearing. Pet. at p. 15. Counsel for Petitioner also seeks attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"). Id. Respondents assert that Petitioner's parole automatically terminated when she left the United States and that when she attempted to return, ICE properly classified her as an arriving alien subject to the mandatory detention scheme of §1225(b). Resp. at 5.

Petitioner cites no case in which a court found that § 1225(b)'s mandatory detention scheme violates the Fifth Amendment. See Pet. at ¶ 56 (citing da Silva v. Nielsen, No. 5:18-MC-00932, 2019 WL 13218461, at *10 (S.D. Tex. Mar. 29, 2019)). To the extent Petitioner relies on da Silva, she reads it too broadly for it does not hold that any immigrant detained under § 1225(b)(1) has a Fifth Amendment due process right to an individualized bond hearing. Rather, da

Silva held that detained immigrants have a "right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable." da Silva v. Nielsen, No. 5:18-MC-00932, 2019 WL 13218461, at *10 (S.D. Tex. Mar. 29, 2019) (internal quotation marks and citation omitted).

Next, Petitioner makes a cursory and speculative argument that a discrepancy between the date on the Notice to Appear and on the corresponding Certificate of Service "calls into question whether Petitioner in fact received adequate and accurate written notice of the charges against her and of the time and place of her hearing." Pet. at ¶ 67. Notably in making this argument, Petitioner does not assert that Petitioner did not in fact receive notice of the charges against her or that the notice itself was substantively deficient. Id. at ¶¶ 64-68. Indeed, contrary to Petitioner's speculation that she may not have received the charging document, she attaches it to her petition. Id. at Ex. A. Without additional factual pleading to establish that Petitioner did not have notice of the charges against her, the Court finds she has not raised a claim that any alleged discrepancy violated her Fifth Amendment due process rights.

Petitioner's final argument merits more discussion. Under the INA, two statutes generally govern a noncitizen's detention pending a final order of removal: §§ 1225 and 1226. See Jennings v. Rodriguez, 583 U.S. 281, 289 (2018). Section 1225(b)(1) mandates detention for certain arriving aliens. Similarly, Section 1225(b)(2)(A) mandates detention when "an applicant for admission" is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Generally, "§§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin." Jennings, 583 U.S. at 302. Noncitizens whose detention is governed by 8 U.S.C. § 1226(a), however, are subject to discretionary detention and entitled to an individualized bond

determination. See also Santillan Quiroz v. Mullin, 180 F.4th 1226, 1237 (10th Cir. 2026) (holding that "noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond)").

The gist of Petitioner's argument is that the grant of immigration parole (and later TPS) provides her with benefits that funnel her into the detention mechanism of § 1226, governing aliens found in the interior, and not that of § 1225, governing arriving aliens. Petitioner suggests that even though her immigration parole had an expiration date of June 12, 2025, 8 C.F.R. § 212.5(e)(1)(ii) & (2) operate to require that an immigration judge make an individualized determination as to whether the purpose of her parole had been accomplished before her parole is terminated. Pet. at ¶¶ 24-26, 59-60. She concludes that if her parole were not properly terminated she remained, even upon leaving the United States, an alien found within the United States and thus subject to the detention mechanism of § 1226.

Generally, the Tenth Circuit has held that aliens are entitled to individualized parole determinations related to the revocation of parole. Sierra v. Immigr. & Naturalization Serv., 258 F.3d 1213, 1219 (10th Cir. 2001). However, the noncitizen in Sierra had been in the United States for 18 years and thus, unlike Petitioner here, was not arriving at the border when the government sought to withdraw his parole. Id.

Instead, "'[a]n alien who has traveled abroad and seeks to reenter the country upon return is generally deemed to be seeking an admission into the United States . . . .'" Barrow v. Noem, No. 0:26-CV-1029, 2026 WL 445500, at *2 (D. Minn. Feb. 17, 2026) (quoting Vazquez Romero v. Garland, 999 F.3d 656, 660 (9th Cir. 2021), and collecting cases). Courts have concluded the same is true for noncitizens who leave the United States after the expiration of their parole and subsequently attempt to reenter the United States and are apprehended at the border. Abitih v.

Wilkinson, No. 20-CV-6403, 2021 WL 733806, at *2 (W.D.N.Y. Feb. 25, 2021) (applying § 1225(b)); see also Svenin v. Casey, No. 25-CV-1865, 2025 WL 2917319, at *2 (S.D. Cal. Oct. 14, 2025) (alien paroled into the United States is "applicant for admission" after leaving and returning to United States); St. Charles v. Barr, 514 F. Supp. 3d 570, 578 (W.D.N.Y. 2021) (alien with temporary protected status was on the threshold of legal entry after leaving and returning to United States). Such holdings are consistent with the plain language of 8 C.F.R. § 212.5(e)(2). Section 212.5(e)(1) contains two provisions for the automatic expiration of parole, only one of which confers the processes of § 212.5(e)(2). 8 C.F.R. § 212.5(e)(1). Section 212.5(e)(1)(i) states that parole automatically expires when a noncitizen departs from the United States, as Petitioner did in this case, and does not confer the benefits of § 212.5(e)(2)'s procedure.

The Court finds that Petitioner was properly classified as an arriving alien when she departed from the United States and then attempted to return shortly thereafter. The Court finds further that, as an arriving alien, Petitioner is subject to the mandatory detention procedure of § 1225(b). The Court further determines that her detention is not yet sufficiently prolonged as to be punitive. See Anzures-Ortega v. Warden, Otero Cnty. Prison Facility, No. 2:26-CV-02853-MIS-JHR, 2026 WL 2838762, at *1 (D.N.M. Sep. 22, 2026). The Court thus concludes that Petitioner's detention does not yet violate her Fifth Amendment due process rights.

Accordingly, it is **HEREBY ORDERED** that Petitioner Wildlande Fevrier's Petition for Writ of Habeas Corpus, ECF No. 2, is **DENIED** without prejudice. Furthermore, because Petitioner did not prevail, the Court **DENIES** her request for attorneys' fees under the EAJA.

Margaret Strickland

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE